UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| VAIBHAVI PATEL,<br><br>Plaintiff,<br><br>vs.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC d/b/a HALEON US, INC., PFIZER, INC. d/b/a PFIZER CONSUMER HEALTHCARE LLC, WYETH, LLC, AND WYETH CONSUMER HEALTHCARE, LLC,<br><br>Defendants. | Case No. 3:23-cv-00248-RJC-SCR<br><br><br>**ORDER GOVERNING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

## ORDER

Before the Court is the parties' Joint Motion for Entry of Order Governing Production of Documents and Electronically Stored Information (the "Joint Motion"). Doc. No 25. The parties, through their respective counsel, agree to produce documents and electronically stored information in this case in accordance with certain specifications. Upon consideration, the Court finds that the parties' Joint Motion should be and hereby is **GRANTED**. The Order Governing Production of Documents and Electronically Stored Information is as follows:

**IT IS HEREBY ORDERED** that the Court enters this Order Governing Production of Documents and Electronically Stored Information ("Protocol"), and directs that Plaintiff and Defendants (collectively, the "Parties") will produce documents in accordance with the agreed upon specifications below:

**I. GENERAL PROTOCOLS**

Nothing in this Protocol alters a party's rights, obligations, and responsibilities under the

applicable Federal Rules of Civil Procedure and applicable decisional authority, nor does anything in this Protocol impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure, Local Rules of the United States District Court for the Western District of North Carolina, and applicable decisional authority. The Parties reserve all objections under the Federal Rules of Civil Procedure, Local Rules of the United States District Court for the Western District of North Carolina, and applicable decisional authority for matters relating to the production of data that are not specifically addressed in this Protocol.

A. **Litigation Holds and Preservation**. If, during its document collection efforts, a party learns that responsive Electronically Stored Information ("ESI") that once existed was lost, destroyed, or is no longer retrievable, the producing party shall explain, to the extent that the information is reasonably available, where and when the ESI was last retrievable in its original format.

B. **Culling and Search Terms**. The Parties will meet and confer to discuss the following in an effort to reduce the number of documents to be reviewed during the discovery process: search term culling, file-type culling, de-duplication of documents, and date restrictions. In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. The Parties hereby agree that a Producing Party may use e-mail thread suppression to exclude lesser-included emails from production, provided that all non-duplicative attachments and message content would be produced. In the event of a dispute, the Parties must meet and confer to discuss any issues or concerns surrounding applicable

search terms or culling within 14 days of any party's request for such conference.

The fact that a document may have been retrieved by application of the agreed upon search terms shall not prevent any party from withholding from production such document for lack of responsiveness or privilege.

In the event that any party determines in good faith, after attempting to use the agreed search terms, that its use of any of those search terms is unreasonably burdensome and inefficient, then it shall meet and confer with the party that propounded the document request to which it is responding. The requesting party shall negotiate in good faith to modify the agreed search terms. In the absence of a mutually acceptable agreement to modify the agreed search terms, the producing party may apply to the Court to modify the terms of this Protocol. Nothing in the foregoing (or the section below) obligates any party to accept the other party's designation of document custodians and document repositories as the full, complete and accurate list of document custodians and document repositories in the case. Each party expressly reserves its right to challenge the custodian file designations provided by the opposing party.

**C. Custodians and Data Repositories**. The Parties may identify hard-copy documents or ESI: (a) by identifying and selecting custodians most likely to possess relevant documents; and (b) by applying the agreed upon search terms to identifiable data repositories and custodian data sources. Each producing party may, at its election, review hard-copy documents or ESI that contains any agreed upon search terms for responsiveness and privilege prior to production to the receiving party. Each party will be primarily responsible for identifying custodians, custodial data sources, and other data repositories which contain discoverable documents in its possession. The party's designation of custodians, custodial data sources, and other data repositories may be challenged as insufficient by the receiving party. If such

designations are challenged, the parties will confer on the scope of the custodians and data repositories before presenting the matter to the Court.

      **D.**    **Bates Numbering**. All images must be assigned a Bates number that: (1) must be unique across the entire document production; (2) must maintain a constant length (zero/0-padded) across the entire production; (3) must contain no special characters or embedded spaces; (4) must be sequential within a given document; (5) must not obscure any part of the underlying image; (6) must, to the extent possible, be oriented in the same manner as the majority of the text on the page.

      **E.**    **Confidentiality Designations**. The producing party must brand any confidentiality or similar designation in a corner of the TIFF images pursuant to the protective order entered in this case. Those designations must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number. Matters pertaining to a party's assertion of confidentiality and related issues are addressed more fully in a separate Order governing confidentiality of discovery materials.

      **F.**    **Redactions**. Any producing party may use redactions to protect attorney-client or attorney work product privileges or protected patient health information or other personal information.

      When a document is partially privileged, the document will be produced in TIFF image with the privileged portions redacted. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable. The TIFF image for a document produced in redacted form will be a label identifying the redacted area of the document. For redacted items which were originally ESI, unaffected, non-privileged metadata fields will be provided.

Neither party is entitled to redact information from a responsive document on the basis of relevance. The fact that a party produces a document without redactions shall not constitute an admission or concession that all portions of the document are relevant to claims or defenses in the action.

For all redactions, the redacting party will produce a redaction log in a form sufficient to enable the receiving party to analyze the validity of the redaction.

G. **Attachments and Parent/Child Relationships**. The parent-child relationships (the association between an attachment and its parent document) must be preserved. Non-relevant attachments may be excluded from production. All non-relevant attachments excluded from production should be produced as a slipsheet or placeholder.

H. **Privilege Logs**. For documents entirely withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the designating party shall produce one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data. Privilege logs will be produced within 60 days following each document production. The privilege log shall contain at least the following fields from the top-line email or document metadata:

    i. PL No

    ii. PLBegAttach

    iii. PLEndAttach

    iv. Custodian

    v. Date

    vi. Author/Sender

    vii. To

viii. CC

ix. BCC

x. Basis (e.g. Attorney Client or Work Product)

xi. Description (description of the privilege claimed sufficient to enable the receiving party to assess the applicability of the privilege)

**I.** **Database Load Files/Cross-Reference Files**. Documents must be provided with (1) a delimited metadata file (.dat or .txt); and (2) an image load file (.lfp, .opt, or .dii) as detailed in Appendix 1.

**J.** **File Size Limitation/Non-Standard Files**. To the extent necessary or practical, the format of production of unusually large files and non-standard electronic files, large, oversized documents (e.g., blueprints) etc., will be discussed before production to determine the optimal production format.

**K.** **Cost-Shifting**. Generally, the costs of production pursuant to this Protocol shall be borne by each producing party. However, the Court may apportion the costs of electronic discovery in accordance with and only as allowed by the Federal Rules of Civil Procedure. A producing party may seek cost shifting for requests for ESI that is not reasonably accessible due to undue costs or burden. This paragraph is not meant to waive, limit, reduce, or increase the rights and/or obligations of any party.

**L.** **Inadvertently Disclosed Information**. In discovery in this lawsuit, the Parties have agreed that they do not intend to disclose information subject to a claim of attorney-client privilege or attorney work product protection. If, nevertheless, a party (the "Disclosing Party") inadvertently discloses such privileged or work product information ("Inadvertently Disclosed Information") to another party (the "Receiving Party"), such disclosure shall not constitute or be

deemed a waiver or forfeiture of any claim of attorney-client privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Inadvertently Disclosed Information and its subject matter.

If a Disclosing Party notifies the Receiving Party of Inadvertently Disclosed Information, the Receiving Party shall return or destroy, within 15 business days, all copies of such information and upon written request provide a certification of counsel that all such Inadvertently Disclosed Information has been returned or destroyed. After a Disclosing Party provides written notice of inadvertent production, a Receiving Party shall not copy, distribute, or otherwise use in any manner the disputed documents or information, and shall notify all persons to whom the Receiving Party has disseminated a copy of the documents or information that the documents or information are subject to this Order and may not be copied, distributed, or otherwise used pending further notice from the Court.

**II.  PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**A.  General**. The procedures and protocols set forth in this Protocol shall govern the production of Electronically Stored Information ("ESI") in this matter, unless the Parties agree in writing to change them or they are changed by the Court at the request of a party. To the extent that third parties may produce documents in this case, the Parties agree to request that such third parties adopt this Agreement.

**B.  Avoidance of Duplicate Production**. Among responsive files that any party may produce in this action or may list on a required privilege log, the party may take reasonable steps to de-duplicate ESI.

**C.  Metadata Fields and Processing**. Each of the metadata and index fields set forth in Appendix 2 that can be reasonably extracted from a document will be produced for that

document. If any party becomes aware of a problem extracting metadata or any other problem with the metadata fields or processing, the party who becomes aware of the problem must notify the other party and meet and confer with the other party to arrive at a mutually acceptable resolution to the issue. The Parties are not obligated to populate manually any of the fields in Appendix 2 if such fields cannot be extracted from a document.

D. **Native File Productions**. Any native files that are produced must be produced with the applicable metadata fields set forth in Appendix 2. The Parties will produce all Microsoft Excel and any audio or video files as native files, unless redacted. If production in native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format.

E. **TIFFs**. Single page group IV compression TIFF images will be provided using at least 300 DPI print setting. Each image must have a unique file name, which is the Bates number of the image. The producing party will make reasonable efforts to produce these TIFF images consistent with the appearance of the documents as kept in the ordinary course of business and will make reasonable efforts not to split or divide documents into multiple page TIFF images for the purposes of production where those documents are not maintained in a single page format. The TIFF image will include, when feasible and as applicable to the underlying ESI, visible and legible images of comments and hidden text contained within the native document.

F. **Embedded Objects**. Embedded objects will be extracted as separate documents and treated like attachments to the document.

G. **Compressed Files**. Compressed file types will be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression

resulting in individual folders and/or files.

      **H.** **Text Files**. For each document, a single text file will be provided along with the image files and metadata. The text file name will be the same as the Bates number of the first page of the document to which it corresponds. File names must not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file will be created using OCR and will be produced in lieu of extracted text. Except in the case of redacted documents, the receiving party will not be required to rely upon a less accurate version of the text than the producing party.

      **I.** **Structured Data**. In instances in which ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties must produce the information in such a report form, in the reasonably usable TIFF-image format described above. If an existing report form is not reasonably available, then the Parties will meet and confer to find a mutually agreeable report form.

## III. PRODUCTION OF HARD-COPY INFORMATION

      **A.** **Hard-Copy Documents**. The Parties may produce hard-copy documents either in their hard-copy form or as scanned images. The following sub-paragraphs apply to hard-copy documents produced as scanned images. Each hard-copy document must be scanned as black and white, single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI) with corresponding OCR text in document level .TXT format and standard load files which can be used with commercially available litigation software packages. Each image must have a unique file name, which is the Bates number of the image. To the extent technically

ORDER GOVERNING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION – PAGE 9

Case 3:23-cv-00248-RJC-SCR   Document 26   Filed 09/05/23   Page 9 of 13

available, original document orientation must be maintained (i.e., portrait to portrait and landscape to landscape). The Parties will accommodate reasonable requests for production of specific images in color.

      **B.**    **Index Fields**. For each hard-copy document, the following information must be produced and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR) acquired text files are produced. Each index field must be labeled as listed below:

      i.    BegBates,

      ii.    EndBates,

      iii.    BegAttach,

      iv.    EndAttach,

      v.    PageCount,

      vi.    Confidentiality, and

      vii.    Custodian Name, to the extent available.

The Parties will meet and confer to discuss whether objective coding information for hard- copy documents should be exchanged.

      **C.**    **Unitizing of Documents**. Distinct documents must not be merged into a single record, and single documents will not be split into multiple records (i.e. hard-copy documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately. The Parties will make their best efforts to unitize documents.

## IV. REMEDIES

A. All prior consistent orders remain in full force and effect.

B. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

**SO ORDERED**.    Signed: September 5, 2023

_____
Susan C. Rodriguez
United States Magistrate Judge

# APPENDIX 1: FILE FORMATS

**Image Load Files**

Every document referenced in a production image load file must have all corresponding images, text and metadata.

The name of the image load file must mirror the name of the delivery volume and should have a .LFP, .OPT, or .DII extension.

The volume names must be reasonably consecutive (e.g. ABC001, ABC002 ...).

The load file must contain one line per image.

Every image in the delivery volume must be contained in the image load file.

The image key must be named the same as the Bates number of the image.

Load files must not span across media.

**Metadata Load Files**

The metadata load file must use the following delimiters:

> Column delimiter: ASCII 020
>
> Text qualifier: ASCII 254
>
> New line: ASCII 174

Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.

The first record must contain the field names in the order of the data set forth in Appendix 2.

All data/time fields must be produced in "YYYYMMDD HH:MM AM/PM (GMT)" format.

A carriage-return line-feed must be used to indicate the start of the next document.

Load files must not span across media.

The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.

The volume names must be reasonably consecutive (e.g. ABC001, ABC002...).

## APPENDIX 2: METADATA FIELDS

| FIELD | FORMAT | DESCRIPTION |
| --- | --- | --- |
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| CUSTODIAN | Multiple Choice | Custodian name |
| DATE_CREATION | Date (date:time) | Creation Date File System |
| DATESENT | Date (date:time) | Sent Date for email |
| DATELASTMOD | Date (date:time) | Last Modified File System |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (efiles) |
| HASHVALUE | Fixed-Length Text | MD5Hash (or CONTROL_ID for scanned paper) |
| FILEPATH | Fixed-Length Text | PSIfield: [Relativity_Path] |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| PAGECOUNT | Whole Number | Page count |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |